569 A.2d 1035

**Bruce C. LOCH and Arnold C. Rapoport, Appellants,**

**v.**

**The ZONING HEARING BOARD OF the BOROUGH OF EMMAUS, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Nov. 16, 1989.

Decided Feb. 8, 1990.

Henry S. Perkin, Perkin, Rapoport, Schattenstein & Feldman, Allentown, for appellants.

John W. Ashley, Fonzone and Ashley, Allentown, for appellee.

Before CRAIG, McGINLEY and SMITH, JJ.

CRAIG, Judge.

Bruce C. Loch and Arnold C. Rapoport (applicants) appeal from a decision of the Court of Common Pleas of Lehigh County affirming a decision of the Zoning Hearing Board of the Borough of Emmaus denying applicants' request for a special exception.

The issues involve (1) whether a planned street area can be counted toward the minimum lot area required for an apartment building, (2) whether off-street parking can be placed on such an area, and (3) whether the proposal violates special exception general standards.

The physical facts are undisputed. Applicants are the record owners of property located at 27–31 and 101 East George Street. The land is located in a Medium Density

Residential District and is part of a recorded subdivision known as Kline's Terrace.

Applicants requested approval from the board for construction of an 18–unit apartment building. Low-rise apartments are permitted as a special exception under section 603 of the zoning ordinance.[1]

After a hearing, the board issued a decision on January 6, 1987, denying applicants' request for a special exception. The board found that applicants failed to prove that they own the minimum land area requirement of 57,600 square feet which undisputably is needed for the proposal. Additionally, the board found that the apartment building would adversely affect the health, safety and welfare of the community. Applicants appealed to the Court of Common Pleas of Lehigh County. The court affirmed the decision of the board and this appeal followed.

### 1. *Lot Size and Parking Site*

■ "As to special exceptions, our cases have repeatedly made clear that the applicant has both the persuasion burden and the initial evidence presentation duty to show that the proposal complies with the 'terms of the ordinance' which expressly govern such a grant." *Bray v. Zoning*

---

1. Section 1403 of the ordinance states general criteria which must be met for the granting of a special exception. The general requirements are as follows:

1403.11 In accordance with the Borough of Emmaus Comprehensive Plan and consistent with the spirit, purposes, and intent of this Ordinance.

1403.12 In the best iterests of the Borough, the convenience of the community, the public welfare, and be an improvement to property in the immediate vicinity.

1403.13 Suitable for the property in question, and designed, constructed, operated, and maintained so as to be in harmony with and appropriate in appearance with the existing or intended character of the general vicinity.

1403.14 In conformance with all applicable requirements of this Ordinance.

1403.15 Suitable in terms of permitting the logical, efficient and economical extension of public services and facilities such as public water, sewers, police and fire protection, and public schools.

1403.16 Suitable in terms of effects on street traffic and safety with adequate sidewalks and vehicular access arrangements to protect major streets from undue congestion.

*Board of Adjustment,* 48 Pa.Commonwealth Ct. 523, 526, 410 A.2d 909, 910 (1980). This court's conclusion is that applicants have the lot size required for their proposal.

Applicants propose to place one of the two 18–space parking lots opposite the intersection of East George Street and Williams Street. Williams Street appears on the recorded subdivision plan of Kline's Terrace. The plan indicates that Williams Street continues across East George Street into the area on which applicants propose to place the parking lot. Appended to this opinion is an exhibit showing the proposal.

The board found that, although the portion of Williams Street that extends into applicants' land has never been developed, the applicants did not request a vacation of the street nor did they attempt to obtain a clear title to the street. The board stated:

> Without that portion of land, the proposal would then be on two (2) non-contiguous tracts of land, would be undersized as far as size of lot area required for that number of apartment units, and may cause other problems with regard to the percentage of land coverage, open space, and other requirements of Section 1403 *et seq.* of the Borough of Emmaus Zoning Ordinance of 1975.

However, section 1724 of The Borough Code, Act of February 1, 1966, P.L. (1965), 1656, *as amended,* 53 P.S. § 46724 states:

> Whenever any street shall have been laid out and shall not have been opened to, or used by the public for a period of twenty-one years, such street shall not thereafter be opened without the consent of at least fifty-one percent of the number of owners of the abutting real estate and without the consent of the owners of at least fifty-one percent of the property abutting such street, based on a front foot basis.

There is no dispute that the portion of Williams Street that extends into applicants' land has remained unopened more than twenty-one years, and that applicants are the

record owners of more than 51 percent of the land abutting the unopened portion of Williams Street. In *Heller v. Borough of South Williamsport*, 47 Pa.Commonwealth Ct. 642, 408 A.2d 1172 (1979), this court stated that, in the absence of any public use of a street for twenty-one years, the servitude imposed by the offer of dedication is removed and the land is to be treated as though it had never been dedicated. Although the potential public right-of-way in the lane is lost as a result of the passage of time and lack of acceptance, the purely private easement rights of individual property owners in the plan of lots to use the lane is not extinguished. *Riek v. Binnie*, 352 Pa.Superior Ct. 246, 507 A.2d 865 (1986).

Therefore, in this case, the *public* right to use the unopened portion of Williams Street has been extinguished. However, the *private* easement rights of individuals who purchased property in Kline's Terrace pursuant to the plan of lots, including the unopened portion of Williams Street, are not extinguished. Therefore, applicants have title to the land, subject to those existing private easements.

Thus, the first question posed by this situation is whether applicants' land, subject to the unopened portion of Williams Street, can be counted toward the required minimum lot area of 57,600 square feet. Examination of the recorded plan shows that the unopened portion of Williams Street, in applicants' plan, measures approximately 57 feet by 102 feet, at the least, and therefore embraces an area of not less than 5,814 square feet, which, if subtracted from applicants' total land area of 57,745 square feet would leave a lot area of 51,931 square feet, a total substantially less than the 57,600 square feet required.

This court has already held that easement rights do not negate open space. Even surface easement rights, for vehicular travel, do not detract from the land area countable for minimum lot area purposes. *Mentha Corporation v. The Zoning Board of Adjustment of Philadelphia*, 1 Pa.Commonwealth Ct. 415, 275 A.2d 427 (1971). Therefore, the board and court erred, as a matter of law, in concluding

that this proposal did not comply with the minimum lot area requirement.

■ However, the proposed plan in this case, viewed along with the recorded plan, requires consideration of a closely related factor because the proposed site of the southwesterly apartment parking lot apparently occupies the entire area of the unopened portion of Williams Street. Thus, this court must also consider whether the development plan was properly disapproved when the location of part of the proposed off-street parking is astride an area subject to easements of passage held by other lot owners in the recorded plan.

The problem is not wholly theoretical because the northwesterly stub-end of unopened Williams Street abuts the southeasterly boundaries of two lot owners who could seek to use their easement rights—amounting to a private street—to traverse applicants' property to reach George Street, although the degree of likelihood of such a matter does not appear on this record. Stated another way, the problem is whether off-street parking (half of which is within the required parking ratio of 1.5 spaces per dwelling unit) can be located over the area of a potential private street.

The unavoidable conclusion is that such a parking location mandates disapproval of the plan. Although sub-surface easements, as for sewers and water lines, obviously do not inhibit the inclusion of the land surface in computing compliance with area requirements, and, as this court has held, vehicular travel easements do not negate the counting of affected area for lot open space, we must conclude that an off-street parking location within the lines of a potential private street amounts to non-compliance. Where the tribunals below have reached the right result, this court may affirm on a different theory. *Friedlander v. Zoning Hearing Board of Sayre Borough*, 119 Pa.Commonwealth Ct. 164, 546 A.2d 755 (1988).

Although our resolution of this issue mandates affirmance, the possibility that the applicants could resubmit the plan with the required increment of off-street parking, (and possibly also their 9 extra parking spaces) located elsewhere than within the unopened end of Williams Street, indicates that this court should proceed to consider the remaining issue.

## 2. *General Standards*

The Pennsylvania decisions have placed on the objectors the burden of presenting evidence that the proposal will be detrimental to public health, safety and welfare. *Bray*, 48 Pa.Commonwealth Ct. at 527, 410 A.2d at 911. Objectors must show, to a high degree of probability, that the proposed use will substantially affect the health and safety of the community. *Tuckfelt v. Zoning Board of Adjustment*, 80 Pa.Commonwealth Ct. 496, 471 A.2d 1311 (1984).

In this case, the board relied on a memorandum from the borough fire chief indicating that access to East George Street is difficult because of its 14–foot cartway, as well as testimony from neighbors that the apartments would cause additional traffic which would be detrimental to the community.

Initially, we note that the fire chief had prepared the memorandum for an earlier development plan. The fire service did not object to the proposed plan, but the fire chief did recommend proper fire suppression because access to East George Street is difficult and because a narrow bridge inhibits use of one of the roads accessible to East George Street. The maps included in the record indicate that the proposed development will be accessible by more than one route. Additionally, applicants have offered to increase the width of East George Street by three feet to accommodate the fire department.

Objectors failed to prove any increase in traffic detrimental to the health, safety and welfare of the community. Although witnesses testified at the hearing that the apart-

ments would generate additional traffic, this court, in *Brentwood Borough v. Cooper*, 60 Pa.Commonwealth Ct. 462, 431 A.2d 1177 (1981), held that general condemnations of anticipated traffic increases are not sufficient for denying approval when there is compliance with specific requirements.

Our decision is to affirm.

## ORDER

NOW, February 8, 1990, the order of the Court of Common Pleas of of Lehigh County, dated January 31, 1989, is affirmed.